UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| HDMG Entertainment, LLC, | ) | Civil Action No.: 4:16-cv-01626-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Certain Underwriters at Lloyd's of London Subscribing to Policy No. L009082, | ) ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court on Defendant's motion for summary judgment. *See* ECF No. 64. The Court grants in part and denies in part the motion for the reasons set forth below.[1]

## **Background**

The parties do not dispute the following facts. Plaintiff, HDMG Entertainment, LLC, planned to sponsor and produce an entertainment event known as the Swamp Fox Biker Bash (the "Bash") that was scheduled to occur at the Swamp Fox Entertainment Complex in Marion, South Carolina between May 8 and 15, 2015. Compl. at ¶ 3 [ECF No. 1-1]; Answer at ¶ 3 [ECF No. 27]. As the Court has previously noted, Plaintiff is a limited liability company organized under the laws of Delaware and doing business in Marion County, South Carolina; its principal place of business is in Milford, Connecticut, and its managing member and president is Robert Hartmann, Sr. ("Hartmann"), who is a citizen and resident of Connecticut. [Jan. 25, 2017 Order at 1, ECF No. 14]. Plaintiff leased the Swamp Fox Entertainment Complex from HSGCHG Investments, LLC ("HSGCHG"), a real estate holding company in which Hartmann has a 90% ownership interest. Hartmann Aff. at 1 [ECF No. 72-

---

[1] Pursuant to Local Rule of Civil Procedure 7.08, the district court may decide motions without a hearing. The Court has reviewed the parties' filings and determined a hearing in this matter is unnecessary.

1].

In order to produce the Bash, Plaintiff needed a communications system in the venue to provide Internet access, phone service, and other services crucial to the event's success; without it, the Bash could not occur. Mem. in Supp. of Mot. for Summ. J at 3. As owner of the venue, HSGCHG entered into a contract with Time Warner Cable ("Time Warner") on January 23, 2015, to put a communications system in the venue. Resp. Mem. in Opp'n to Def.'s Mot. for Summ. J. at 10 (citing Time Warner Contract [ECF No. 72-6]). On January 29, 2015, as the work began, Time Warner estimated a March 14, 2015 completion date for the communications system. Mem. in Supp. of Mot. for Summ. J. at 5 (citing Jan. 29, 2015 Email [ECF No. 66-3]). However, this initial estimate was not met. On April 6, 2015, Time Warner told Plaintiff that the installation would occur on April 27. [Apr. 6, 2015 Email, ECF No. 72-8]. However, on April 22, 2015, Time Warner informed Hartmann that "due to unforeseen delays in construction[,]" installation would not be completed until after the Bash was scheduled to occur, forcing cancellation of the Bash. [Apr. 22, 2015 Letter, ECF No. 72-11]; Compl. ¶ 6.

Plaintiff had sought event cancellation insurance for the Bash. On February 18, 2015, Gabriel Gornell, executive producer of the Bash, completed an event cancellation application ("the Application") with Ascend Insurance Brokerage ("Ascend") on Plaintiff's behalf. *See* Application [ECF No. 67-4]. In response to Question 12 on the Application—"Will the event require construction work?"—Plaintiff answered in the negative, noting that "[e]lements will require re-certification. But the stage and buildings are fully constructed." *Id.* at 2. In response to Question 19—"Have all necessary arrangements for the successful fulfillment of the performance(s) or event(s) to be insured been made?"—Plaintiff answered in the affirmative. *Id.* at 3. In response to Question 26—"Are there any other material facts or items of information with regard to the proposed performance(s) or event(s)

2

which should be disclosed? (A material fact is one likely to influence acceptance or assessment of this proposal by Underwriters)"—Plaintiff answered in the negative. *Id.* at 4. The Application includes a declaration "that non-disclosures or misrepresentation of a material fact will entitle the company to void the [i]nsurance" and Plaintiff's affirmation that "the information provided in this application . . . is true" and no material facts were withheld. *Id.*

On April 28, 2015, Defendant, Certain Underwriters at Lloyd's of London Subscribing to Policy No. L009082,[2] issued Plaintiff an event cancellation insurance policy with a March 26, 2015 effective date[3] (the "Policy") under which Defendant agreed to indemnify Plaintiff up to $4,490,480.00 for losses resulting from cancellation of the Bash; in exchange, Plaintiff paid a $47,635.12 premium. Compl. at ¶ 4; Answer at ¶ 4; *see* Policy [ECF No. 72-2 at 2]. The Policy has certain requirements for coverage to apply, as well as seventeen exclusions and nineteen conditions. Policy [ECF No. 72-2 at 3, 5, 8–14]. The Policy was underwritten by HCC Speciality Underwriters, Inc. ("HCC") from its office in Massachusetts and delivered to Plaintiff's principal place of business in Milford, Connecticut. [Jan. 25, 2017 Order at 2].

On April 30, 2015, Plaintiff provided a notice of claim to HCC, explaining that it was forced to cancel the Bash due to Time Warner's failure to timely complete the communications system. *See* Notice of Claim [ECF No. 68-1 at 3]. Defendant began to investigate Plaintiff's claim. *See* June 20, 2015 Letter at 1 [ECF No. 68-4]. On August 27, 2015, Plaintiff provided its proof of loss. *See* ECF No. 72-12. On April 15, 2016, before a formal denial of the claim from Defendant, Plaintiff initiated

---

[2] Defendant is an unincorporated association of individuals and/or corporate entities authorized to underwrite insurance issued at Lloyd's of London and doing business in Marion County, South Carolina. [Jan. 25, 2017 Order at 1–2].

[3] As stated, on April 22, 2015, Time Warner advised that the communications system would not be completed until after the scheduled Bash date.

3

this action by filing a complaint in the Court of Common Pleas for Marion County, South Carolina, asserting causes of action for breach of contract, statutory bad faith, and common law bad faith. Compl. at ¶¶ 11–22. On May 6, 2016, after further investigation, Defendant denied Plaintiff's claim, explained the grounds for denial, provided a notice of rescission of the Policy due to alleged material misrepresentations in the Application, and returned Plaintiff's premiums paid. *See* Notice of Rescission at 1 [ECF No. 68-10].

On May 20, 2016, Defendant timely removed the action to this Court under diversity jurisdiction. *See* ECF No. 1. On May 27, 2016, Defendant filed a motion to dismiss for improper venue or in the alternative to transfer venue, which the Court denied on January 25, 2017. *See* ECF No. 14. Subsequently, on March 6, 2017, Defendant filed an answer and counterclaim for: (1) a declaratory judgment that Defendant had no duty to indemnify because no coverage was triggered under the Policy; and (2) a declaratory judgment for rescission of the Policy due to Plaintiff's alleged intentional concealment and misrepresentation of material facts. Answer & Countercl. at ¶¶ 22–60 [ECF No. 24]. On April 2, 2017, Plaintiff filed an answer to Defendant's counterclaim. *See* ECF No. 27. On May 30, 2018, Defendant filed the instant motion for summary judgment. On June 18, 2018, Plaintiff filed a response in opposition, and on June 25, 2018, Defendant filed a reply thereto. *See* ECF Nos. 72 & 73. The matter is now ripe for the Court's consideration.

## **Legal Standard**

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Reyazuddin v. Montgomery Cty., Md.*, 789 F.3d 407, 413 (4th Cir. 2015); *see* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as

a matter of law."). The moving party has the burden of showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Once the movant makes this showing, the opposing party must "go beyond the pleadings" to evince "specific facts showing . . . a genuine issue for trial." *Id.* at 324. A genuine issue of material fact—one "that might affect the outcome of the suit under the governing law"—exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmoving party is required to submit evidence of specific facts by way of affidavits, depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. *Celotex*, 477 U.S. at 322. However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247–48.

The Court should determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Id.* at 251–52. The Court should not grant summary judgment "unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances." *Campbell v. Hewitt, Coleman & Assocs, Inc.*, 21 F.3d 52, 55 (4th Cir. 1994) (citation omitted). In ruling on a motion for summary judgment, the Court must not resolve disputed facts, weigh the evidence, *Russell v. Microdyne Corp.*, 65 F.3d 1229, 1239 (4th Cir. 1995) (citation omitted), or make determinations of credibility. *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986). Inferences that are "drawn from the underlying facts . . . must be viewed

5

in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

## Discussion

Defendant moves for summary judgment pursuant to Federal Rule of Civil Procedure 56 on the grounds that there is no genuine dispute of material fact, entitling Defendant to judgment as a matter of law in its favor on the complaint and Defendant's counterclaim against Plaintiff. However, before determining if there is a genuine dispute of material fact, the Court must first determine what law governs the Policy.

**I.     Governing Law**

Defendant contends that the parties agree that Connecticut law "governs interpretation of the Policy." Mem. in Supp. of Mot. for Summ. J. [ECF No. 65] at 16. Although Plaintiff "agrees Connecticut substantive law regarding interpretation of the [Policy] applies[,]" Resp. in Opp'n [ECF No. 72] at 5, it also "submits that South Carolina law applies" to its claims for statutory and common-law bad faith. *Id.* at 31. For the reasons discussed below, the Court holds that Connecticut law governs the Policy and this dispute.[4]

"[I]n a diversity case, a district court applies the substantive law of the forum state to resolve a plaintiff's state law claims." *Russell v. McGrath*, 135 F. Supp. 3d 427, 430 (D.S.C. 2015) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938); *Brown v. Am. Broad. Co.*, 704 F.2d 1296, 1299 (4th Cir. 1983)). Furthermore, when sitting in diversity, the court "appl[ies] the forum state's choice of law rules." *Id.* (citing *Francis v. Allstate Inc. Co.*, 709 F.3d 362, 369 (4th Cir. 2013)). In South Carolina, "if the parties

---

[4]      The Court noted in its January 25, 2017 Order denying Defendant's motion to dismiss that the Policy does not contain a choice of law provision or a forum selection clause, though the Court declined to resolve what state law applies for purposes of that motion. [Jan. 25, 2017 Order at 2, 8, ECF No. 14].

6

to a contract specify the law under which the contract shall be governed," the Court must honor this choice so long as the application of foreign law does not violate South Carolina public policy. *Nucor Corp. v. Bell*, 482 F. Supp. 2d 714, 728 (D.S.C. 2007) (citations omitted).

Here, Defendant points to Condition 13 of the Policy as evidence that the parties intended for Connecticut law to govern the Policy. *See* Mem. in Supp. of Mot. for Summ. J. at 16 ("Connecticut [l]aw [g]overns"). Plaintiff does not oppose this interpretation of Condition 13. *See* Resp. Mem. in Opp'n at 5 ("Under South Carolina choice-of-law princip[le]s, [Plaintiff] agrees Connecticut substantive law regarding interpretation of the insurance policy applies."). Condition 13, titled "Conformity to Statute," provides that: "[t]erms of this policy in conflict with the written laws of any state in which this policy is issued, which are applicable to this policy, are changed to conform to such laws." Policy [ECF No. 72-2 at 13]. Because the parties do not dispute what this provision means, the Court need not decipher Condition 13 to find the parties' intent. Rather, because the parties' briefs make clear their intention for Connecticut law to govern the Policy, the Court holds that Connecticut law governs the Policy and the causes of actions arising thereunder.

Despite agreeing that Connecticut law governs the Policy, Plaintiff still asserts that South Carolina law applies to its bad faith claims. *See* Resp. Mem. in Opp'n at 31 ("[Plaintiff] respectfully submits South Carolina law applies to its second claim . . ."). In seeking this exception, Plaintiff provides no basis for why South Carolina governs only the bad faith claims but not the breach of contract claim. Because the parties' briefs interpret the Policy as if it is governed by Connecticut law, the Court believes that the parties intend for Connecticut law to apply to the Policy and any causes of action arising under it; Plaintiff's assertion to the contrary is not adequately supported. *See* Fed. R. Civ. P. 56 (e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another

7

party's assertion of fact . . . , the court may . . . consider the fact undisputed for purposes of the motion."). However, because Defendant is entitled to summary judgment on the bad faith claims under South Carolina or Connecticut law, as explained below, no further discussion is necessary regarding which law applies to the bad faith claims. Next, the Court uses Connecticut law to determine whether summary judgment is appropriate on the breach of contract claim.

II. **Breach of Contract**

In moving for summary judgment, Defendant does so on the basis that Plaintiff's loss is not covered, meaning that Plaintiff cannot prevail on its breach of contract and bad faith claims. Mem. in Supp. of Mot. for Summ. J. at 2. Both parties agree that the Bash was ultimately cancelled due to Time Warner's failure to timely finish the communications system. Mem. in Supp. of Mot. for Summ. J. at 14; Resp. Mem. in Opp'n at 1; Reply at 1–2. However, the parties dispute whether that failure was beyond Plaintiff's control. Plaintiff alleges that the cancellation was beyond its control, it suffered damages as a result, cancellation was a covered event under the Policy, and that Defendant breached its contract and refused to pay Plaintiff's claim in bad faith. Compl. at ¶¶ 5–10. Conversely, Defendant alleges that cancellation was not beyond Plaintiff's control and the Policy does not cover the loss. Mem. in Supp. of Mot. for Summ. J. at 1. Defendant also contends that even if the loss is covered, several Policy exclusions apply. *Id.* at 1–2. Finally, Defendant contends that Plaintiff failed to meet three conditions of the Policy, relieving Defendant of any obligation to indemnify. *Id.*

At trial, Plaintiff has the burden of proving that its claim is covered under the Policy, then the burden shifts to Defendant to prove that coverage is excluded. *Nationwide Mut. Ins. Co. v. Pasiak*, 173 A.3d 888, 896 (Conn. 2017) (citation omitted). As explained below, the Court finds that there are

8

genuine issues of material fact with respect to coverage and, thus, must deny summary judgment on the breach of contract cause of action.

### A. Coverage

In moving for summary judgment, Defendant first asserts that Plaintiff cannot show that its loss is covered by the Policy. Mem. in. Supp. of Mot. for Summ. J. at 2. Plaintiff disagrees. Resp. Mem. in Opp'n at 10.

The coverage section of the Policy provides in pertinent part:

### SECTION I – INSURING AGREEMENT

**A. EVENT CANCELLATION**

We will indemnify you, up to the Limit of Insurance, for your loss as a direct result of **cancellation**, **abandonment**, **curtailment**, **postponement**, or **relocation** of the insured event to which this insurance applies.

**B. APPLICATION OF COVERAGES**

In order for insurance to apply to Section I, all of the following conditions must be met:

**1.** the loss must be the direct result of an unexpected cause beyond your control and any party who is contracted by you to perform a function critical to the successful fulfillment of the Insured Event other than a principal speaker or entertainer.

**2.** the loss must not be the direct or indirect result of any excluded cause as shown in Section II. –Exclusions of this insurance; and

**3.** you must comply with all other terms and conditions of this policy.

Policy [ECF No. 72-2 at 8]. By the Policy's plain language, there is no coverage if the cause of the loss is (1) expected; or (2) within Plaintiff's control or the control of a party with whom Plaintiff contracted.

9

Defendant argues that the loss was not unexpected, within Plaintiff's control, and within control of a party Plaintiff contracted because Plaintiff: (1) chose a venue without a communications system; (2) knew about the need for construction at the time it applied for insurance; (3) failed to take any timely action to seek alternatives when delays first began on March 14, 2015; and (4) Plaintiff contracted Time Warner. Mem. in Supp. of Mot. for Summ. J. at 19, 20. In response, Plaintiff maintains that the loss was unexpected and beyond its control because: (1) the Policy does not require Plaintiff to select a venue with any particular system; (2) the Policy does not require Plaintiff to seek alternatives within any particular time frame, and when Time Warner informed Plaintiff that installation would not be timely completed, Plaintiff immediately sought alternatives to no avail; and (3) Time Warner's contract was with HSGCHG, not Plaintiff, so there was no contractual relationship for Plaintiff to have control over Time Warner's delay or to have expected or foreseen the delay. Resp. Mem. in Opp'n at 10–11.

As stated, Plaintiff, as the insured, bears the initial burden of showing that its loss is covered. *Pasiak*, 173 A.3d at 896. Therefore, the Court, construing the facts in the light most favorable to the non-moving Plaintiff, looks to whether Plaintiff has proffered evidence sufficient to create a genuine issue of material fact as to coverage.

First, there is a genuine dispute as to whether the fact that Plaintiff chose a venue without a communications system means that the subsequent loss resulting from the failure to timely install one was expected and within Plaintiff's control. These principles of unexpectedness and lack of control encompass Defendant's argument about the fortuity doctrine, which is "a fundamental requirement in insurance law that the insurer will not pay for a loss unless the loss is 'fortuitous,' meaning that the loss must be accidental in some sense[.]" *Brown v. State Farm Fire & Cas. Co.*, 90 A.3d 1054, 1059 (Conn.

App. Ct. 2014) (citation omitted). Plaintiff has proffered evidence through the affidavit of Hartmann, Plaintiff's president and managing member, such that a reasonable juror could find that the loss was unexpected, beyond Plaintiff's control, and accidental in some sense. *See* Hartmann Aff. at 2–3 [ECF No. 72-1] ("The initial installation schedule was for the cable installation to be completed on March 14, 2015.") ("Time Warner told me that 'due to unforeseen delays' the fiber optic cable would not be installed by April 17, 2015, 'as previously communicated.'") ("HDMG had no control over Time Warner's failure to install the fiber optic cable under its agreed-upon schedule.").

Second, although Plaintiff knew at the time it applied for insurance that a communications system was needed in the venue, there is a genuine dispute as to whether the work to create the system constituted "construction" as contemplated by the Application or mere "installation" about which the Application did not inquire. The Application does not define construction, and the correspondence in this case reveals interchangeable use of "construction" and "installation" when referring to the work. Plaintiff contends that the work was mere installation, while Defendant asserts that it was construction. See Mem. in Supp. of Mot. for Summ. J. at 30; Resp. Mem. in Opp'n at 28–30. Whether the work was "construction" that Plaintiff materially misrepresented in the Application or mere "installation" is a question of fact for the jury. For the same reason, there is also a genuine dispute as to whether Plaintiff knowingly made a material misrepresentation in the Application entitling Defendant to rescission.

Third, Plaintiff disputes Defendant's allegation that Plaintiff failed to seek alternatives when delays first began, asserting that it "contacted any fiber optic or communications provider [Plaintiff's officers] could think of to see if there was an alternative to the Time Warner fiber optic cable." Hartmann Aff. at 3. Moreover, Plaintiff contends that there was no alternative for postponing the Bash

11

because it was intended to occur contemporaneously with a nearby major biker festival. *Id.* at 2. Accordingly, a juror could find that Plaintiff properly sought alternatives to no avail.

Fourth, there is evidence that Plaintiff did not contract with Time Warner; rather, HSGCHG, the company that owned the venue, did. *See* Time Warner Contract at 1 [ECF No. 72-6]. There is, however, a genuine dispute as to whether Plaintiff had control over or knew about or should have foreseen Time Warner's delays since there is some overlap of Plaintiff's officers and agents with the owners of HSGCHG and there was communication between Time Warner and Plaintiff's officers and agents about the work. *See* Mar. 3, 2015 Email [ECF No. 66-8] (Time Warner subcontractor informing Hartmann and Gornell about tight schedule); Apr. 9, 2015 Email [ECF No. 66-9] (Time Warner providing update to Hartmann and Gornell); Apr. 21, 2015 Letter [ECF No. 66-11] (Time Warner subcontractor informing Plaintiff that work would not be completed before the bash); Apr. 22, 2015 Letter [ECF No. 66-10] (Time Warner informing Hartmann about inability to complete work before the Bash). Thus, the degree of control and knowledge Plaintiff had is a question of fact for the jury. Accordingly, the Court finds that Plaintiff has proffered sufficient evidence such that there are genuine disputes with respect to coverage. Therefore, the Court denies summary judgment on the issue of coverage.

### B. Exclusions

Next, the Court examines Defendant's argument that it is entitled to summary judgment on the grounds there is no dispute that one or more exclusions apply, relieving Defendant of liability. "When construing exclusion clauses, 'the language should be construed in favor of the insured unless it has a high degree of certainty that the policy language clearly and unambiguously excludes the claim.'"

*Pasiak*, 173 A.3d at 896 (citing *Vt. Mut. Ins. Co. v. Walukiewicz*, 966 A.2d 672 (Conn. 2009)).

Defendant contends the following exclusions apply:

## SECTION II – EXCLUSIONS

We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

. . . .

**6.** **Financial Failure**

**a.** Withdrawal, insufficiency or lack of finance however caused;

. . . .

**c.** Lack of adequate receipts, sales or profits of any venture;

. . . .

**e.** Financial default, insolvency, or failure to pay any person, firm or corporation.

**7.** **Lack of Support**

**a.** Lack of adequate response, support or withdrawal of such support by any entity;

**b.** Lack of, or inadequate attendance or insufficient interest prior to attendance.

**8.** **Failure to Make Necessary Arrangements**

Your failure to:

**a.** make all the preliminary arrangements essential to ensure that a satisfactory insured event can be held on the scheduled date. Preliminary arrangements shall include arrangements as a prudent organizer would have made considering the venue size, type of event and the period of time before the open date;

**b.** ensure all licenses, visas, permits and authorizations are current for the term of this policy, and that all necessary contractual arrangements have been confirmed in writing; or

13

> **c.** observe and comply with all federal, state, or local laws, ordinances and regulations.
>
> **9. Pre-existing Circumstances**
>
> > Circumstances existing or threatened at inception of the policy which were then known to you or any of your officers, directors, or partners as being circumstances which a reasonably prudent person would foresee resulting in a loss under this policy, unless such circumstances were advised to us in writing by you or any of your officers, directors, or partners and we agree in writing to accept such circumstances.
>
> . . . .
>
> **12. Breach of Duty of Care**
>
> > Your lack of care, diligence or prudent behavior, the result of which would increase the risk, and/or likelihood of a loss, hereunder.

Mem. in Supp. of Mot. for Summ. J. at 21–24 (quoting Policy [ECF No. 72-2 at 9–11]).

The Court briefly examines whether Plaintiff has proffered evidence creating a genuine dispute with respect to these exclusions. First, Defendant contends Exclusions 6, 7, and 12 apply because Plaintiff's cancellation of the Bash was "related to its own financial failures, lack of support, and breach of its duty of care," claiming that: (1) "[c]orrespondence shows a lack of cash flow and outstanding bills months before cancellation"; (2) "[n]umerous production vendors withdrew due to lack of payment"; and (3) "[Plaintiff] was not able to secure sufficient attendance to properly fund the event." Mem. in Supp. of Mot. for Summ. J. at 22. Defendant does not articulate how Exclusion 12 applies, and it appears to rely on the same allegations about lack of cash flow, outstanding bills, withdrawal of vendors, and insufficient attendance for its contention that Plaintiff breached its duty of care. *See id*. In response, Plaintiff cites Hartmann's affidavit where he states that: (1) Plaintiff had sufficient financial resources to support the Bash; (2) even though some vendors withdrew, they were promptly replaced

14

and no withdrawal caused the cancellation; and (3) Plaintiff did not expect its target market to purchase many tickets in advance. Resp. Mem. in Opp'n at 14, 18. Accordingly, there are genuine disputes with respect to Exclusions 6, 7, and 12.

Second, Defendant contends Exclusion 8 applies because the Bash's cancellation "was related to its own failure to make necessary arrangements," claiming: (1) Plaintiff "did not complete necessary contracts nor ensure that its necessary South Carolina requirements were met for the successful fulfillment of the event"; (2) "performers were not paid with required deposits"; (3) Plaintiff "did not make the necessary payments or sell sufficient tickets as projected to prevent the withdrawal of its event caterer"; and (4) Plaintiff "failed to act at the onset of construction delays . . . to prevent further delays by Time Warner." Mem. in Supp. of Mot. for Summ. J. at 22–23. In response, Plaintiff asserts that "[a]ccording to the Hartmann affidavit, all 'necessary' or 'preliminary' arrangements were made for a successful [Bash]," noting: (1) "HSGCHG's engagement of Time Warner to install the [communications system] was one of the preliminary arrangements necessary for the [Bash]"; (2) "[t]here is no evidence any lack of license or permit existed, or caused the cancellation"; and (3) contracts for security, liquor, first aid, vendors, concessions, tents, temporary state, and temporary lighting were "in process" as of April 22, 2015, when Time Warner informed Plaintiff that it could not complete the communications system. Resp. Mem. in Opp'n at 19–20. Accordingly, there is a genuine dispute with respect to Exclusion 8.

Finally, Defendant contends Exclusion 9 applies because "the absence of a fiber optic communications system was a pre-existing condition known to [Plaintiff]." Mem. in Supp. of Mot. for Summ. J. at 23. In response, Plaintiff asserts that "HSGCHG reasonably and prudently engaged Time Warner to install the [communications system]. When it notified HSGCHG that it could not do so by

15

the required deadline, alternatives were reasonably and prudently explored, with negative results and the[Bash] had to be cancelled." Resp. Mem. in Opp'n at 22. Accordingly, there is a genuine dispute with respect to Exclusion 9. In summation, Plaintiff has proffered evidence, mostly through Hartmann's affidavit and the evidence cited therein, to create genuine disputes with respect to the alleged exclusions. Therefore, the Court denies summary judgment on the issue of exclusions.

### C. Conditions

Next, the Court examines Defendant's contention that it is entitled to summary judgment because there is no dispute that Plaintiff failed to satisfy two conditions in the Policy. Defendant points to these conditions:

### SECTION IV – CONDITIONS

. . . .

**2. Duties in the Event of a Loss**

You must see that the following are done in the event of covered loss or damage:

a. Upon the discovery of any event likely to give rise to a claim under this policy you shall give us prompt notice. Include a description of such loss;

**b.** You shall at all times do all things necessary to avoid or diminish a loss under this policy;

. . . .

**15. Obligation to Rearrange**

You have an obligation to use your best efforts to rearrange any insured event that has been subject to **cancellation** or **abandonment** in order to mitigate any loss covered hereunder.

Mem. in Supp. of Mot. for Summ. J. at 25 (citing Policy [ECF No. 72-2 at 12, 14]). Defendant asserts that coverage is barred because Plaintiff failed to satisfy Conditions 2 and 15, contending these are

16

conditions precedent to coverage. *Id.* at 24, 27. These appear to be duties to mitigate and notify when a loss occurs.

Regardless, Plaintiff has proffered evidence showing that: (1) Time Warner informed Plaintiff on April 22, 2015, that it could not timely complete the communications system; (2) upon learning this, Plaintiff and HSGCHG "contacted any fiber optic or communications provider [they] could think of to see if there was an alternative"; and (3) Plaintiff provided Defendant its notice of loss on April 30, 2015. Mem. in Opp'n to Mot. for Summ. J. at 26–28; Hartmann Aff. at 3. Whether these facts and this evidence show that Plaintiff gave prompt notice and mitigated its loss pursuant to the Policy is a question of fact for the jury. Accordingly, the Court denies summary judgment on the issue of conditions. Because there are genuine disputes with respect to the issues of coverage, exclusions, and conditions, the Court denies summary judgment on the breach of contract cause of action.

### III. Bad Faith

As previously noted, the parties' briefs analyze the Policy as if it is governed by Connecticut law; nevertheless, Plaintiff contends that South Carolina law applies to its bad faith claims.[5] However,

---

[5] To prevail on a bad faith claim under South Carolina law, a plaintiff must present evidence of: "(1) the existence of a mutually binding contract of insurance between the plaintiff and the defendant; (2) a refusal by the insurer to pay benefits due under the contract; (3) resulting from the insurer's bad faith or unreasonable action in breach of the implied covenant of good faith and fair dealing arising under the contract; (4) causing damage to the insured." *Lewis v. Omni Indem. Co.*, 970 F. Supp. 2d 437, 454–55 (D.S.C. 2013).

Connecticut recognizes common law and statutory bad faith. A common law bad faith cause of action arises out of a breach of the "implied covenant of good faith and fair dealing" that accompanies insurance policies. *Buckman v. People Express, Inc.*, 530 A.2d 596, 599 (Conn. 1987) (citations omitted). The Connecticut Supreme Court has held that "[t]o constitute a breach of [the implied covenant of good faith and fair dealing], the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith." *Capstone Bldg. Corp. v. Am. Motorist Ins. Co.*, 67 A.3d 961, 986 (Conn. 2013) (second alteration in original). "Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive." *Id.* It "means more than mere negligence; it involves a dishonest purpose." *Id.* (citing *De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.*, 849 A.2d 382 (Conn. 2004). On the other hand, a cause of action for statutory bad faith arises from a violation of the Connecticut Unfair Insurance Practices Act, which in turn violates the Connecticut Unfair Trade Practices Act. *Id.* at 990–91.

regardless of which state's law applies, Plaintiff cannot succeed on its bad faith causes of action, as explained below.

Defendant argues that Plaintiff cannot prevail on its bad faith claims because the evidence shows that Defendant diligently processed Plaintiff's claim, considered all information submitted in the Application and with the proof of loss, relied on Policy provisions to support its position, conducted site visits and interviews while investigating, and reviewed thousands of documents. Mem. in Supp. of Mot. for Summ. J. at 28–29. In opposing summary judgment, Plaintiff asserts that Defendant decided to deny Plaintiff's claim before Plaintiff even submitted the claim and before any investigation took place. Resp. Mem. in Opp'n at 31. Regardless of which state's law applies, neither of Plaintiff's assertions is supported by the evidence.

For the first assertion that Defendant denied its claim before the claim was even submitted, Plaintiff cites to an April 28, 2015 email sent to Plaintiff by Paul Bassman, Ascend's insurance broker, who stated that " a claim denial . . . would likely be the result if [Plaintiff] initiated a claim." *Id.* at 31–32 (citing ECF No. 67-13). However, Ascend is not the entity that denied Plaintiff's claim; in fact, Ascend was Plaintiff's insurance broker and agent. *See Shetucket Plumbing Supply Inc. v. S.C.S. Agency, Inc.*, 570 F. Supp. 2d 282, 286 (D. Conn. 2008) (citing *Ursini v. Goldman*, 118 Conn. 554 (1934)); *Hiott v. Guar. Nat'l Ins. Co.*, 496 S.E.2d 417 at 422 (S.C. Ct. App. 1997) (citing *Allstate Ins. Co. v. Smoak*, 182 S.E.2d 749 (S.C. 1971)). Accordingly, Plaintiff's first assertion does not support a showing of bad faith by Defendant.

For the second assertion that Defendant denied the claim before any investigation, the evidence is undisputed that Defendant did in fact investigate before denying the claim. *See* June 30, 2015 Letter [ECF No. 68-4]; July 16, 2015 Email [ECF No. 68-3]; July 30, 2015 Letter [ECF No. 68-5]; Sept. 16,

2015 Letter [ECF No. 68-6]; Nov. 30, 2015 Letter [ECF No. 68-7]; Mar. 23, 2016 Letter [ECF No. 68-8]; Notice of Rescission [ECF No. 68-10]. Even assuming no investigation by Defendant, the Connecticut Supreme Court has "decline[d] to extend bad faith actions to allegations based solely on a failure to investigate where the investigation is not mandated under the policy," noting that "[i]nsurers disclaiming their duty to defend or indemnify under the policy, subsequent to a failure to investigate, risk extracontractual liability for consequential economic and noneconomic losses." *Capstone*, 67 A.3d at 990.

Here, the Policy does not mandate an investigation by Defendant, but it imposes certain duties on Plaintiff when Defendant elects to investigate. *See* Policy [ECF No. 72-2 at 12] (emphasis added) ("[Plaintiff] shall cooperate with us and, *upon our request* and expense, shall attend hearings and trials and shall assist in effecting settlement, in securing and giving evidence, in obtaining the attendance of witnesses, in the investigation or settlement of the claim[.]"). Therefore, Plaintiff cannot base a Connecticut bad faith cause of action solely on Defendant's alleged failure to investigate. *See Capstone*, 67 A.3d at 990 ("We . . . conclude that, in the absence of a breach of an express duty under [an] insurance policy, there is no independent cause of action for deficiencies in the insurer's investigation."). Accordingly, Plaintiff's only two grounds for opposing summary judgment on its bad faith claims lack merit. Therefore, the Court grants summary judgment as to the bad faith causes of action.

## **Conclusion**

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's motion for summary judgment, **GRANTING** it with respect to Plaintiff's bad faith causes of action, but **DENYING** it with respect to the remaining issues.

**IT IS SO ORDERED.**


Florence, South Carolina
November 20, 2018

s/ R. Bryan Harwell
R. Bryan Harwell
United States District